**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
MADISON DIVISION**

| | | |
|---|---|---|
| STANDARD PROCESS INC. | : | |
| | : | Case No: 17-CV-909 |
| Plaintiff, | : | |
| | : | **COMPLAINT FOR DAMAGES,** |
| v. | : | **INJUNCTIVE, AND OTHER RELIEF** |
| | : | **FOR VIOLATION OF 15 USC § 1114; 15** |
| KDEALZ LTD. CO. and JOHN DOES 1- | : | **USC § 1125(a); 15 USC § 1125(c); AND** |
| 100, individually or as corporate/business | : | **RELATED CLAIMS** |
| entities, | : | |
| | : | **DEMAND FOR JURY TRIAL** |
| Defendants. | : | |

Plaintiff Standard Process Inc. ("Standard Process") brings this action against Defendants KDealz Ltd. Co. ("KDealz") and John Does 1-100 (collectively, "Defendants") for trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114, false advertising and unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a), trademark dilution in violation of the Lanham Act, 15 U.S.C. § 1125(c); common law trademark infringement; common law unfair competition; deceptive trade practices in violation of Wis. Stat. § 100.18; and tortious interference with contract and business relations, and alleges as follows.  These claims arise from Defendants' misappropriation of Standard Process's trademarks in conjunction with Defendants' unlawful and unauthorized sale of Standard Process's products on the Internet.

**PARTIES, JURISDICTION, AND VENUE**

1.      Plaintiff Standard Process Inc. is a Wisconsin corporation with its principal place of business located in Palmyra, Wisconsin.

2.      Upon information and belief, Defendant KDealz Ltd. Co. a limited liability company organized under the laws of Kentucky, with its principal place of business in New

Haven, Kentucky, and that operates and does business as the storefront "Organic Melodies" on www.amazon.com ("Amazon").

3.      The true names, involvement, and capacities, whether individual, corporate, associated or otherwise of Defendants John Does 1 through 100 are unknown to Standard Process.  Therefore, Standard Process sues these Defendants by a fictitious name.  Standard Process is informed and believes, and on that basis alleges, that the John Doe Defendants sued herein are equally responsible for the events and occurrences referred to herein or otherwise interested in the outcome of the dispute.  When the true names, involvement, and capacities of these parties are ascertained, Standard Process will seek leave to amend this Complaint accordingly.

4.      The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1338 for Standard Process's claims that arise under federal law and 28 U.S.C. § 1367 for Standard Process's claims that arise under state law because they form part of the same case or controversy as Standard Process's claims that arise under federal law.

5.      This Court has personal jurisdiction over Defendants because they have sold, distributed, offered for sale, and/or advertised goods in Wisconsin and directed their tortious activities toward Wisconsin by engaging in actions and infringing on Standard Process's trademarks with the knowledge that their actions would likely injure Standard Process in Wisconsin.  Defendants have caused injury to Standard Process in Wisconsin through acts in Wisconsin, including the sale, distribution, and advertising of Standard Process goods in Wisconsin.  Defendants have also caused injury to Standard Process in Wisconsin through acts outside of Wisconsin while also (a) engaging in solicitation and service activities in Wisconsin,

and (b) selling products into Wisconsin that were used and consumed within Wisconsin in the ordinary course of trade.

6.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred within this judicial district and because Defendants are subject to personal jurisdiction in this district.

## FACTUAL ALLEGATIONS
### Standard Process And Its Trademarks

7.    Standard Process develops, manufactures, and sells high-quality nutritional supplements, including products under the Standard Process®, Standard Process Veterinary Formulas™, and MediHerb brands (the "Standard Process Products").  Standard Process sells its products exclusively through a network of authorized resellers ("Authorized Resellers").

8.    Standard Process devotes a significant amount of time, energy, and resources toward protecting the value of the Standard Process brand, products, name, and reputation.  By distributing Standard Process Products exclusively through its Authorized Resellers, Standard Process ensures that users of Standard Process Products receive the high-quality products they expect from Standard Process, as well as the customer service and information that only Authorized Resellers can provide.   In the highly-competitive nutritional supplement market, quality and customer service are a fundamental part of the consumer's decision to purchase a product.

9.    To promote and protect the Standard Process brand, Standard Process has registered numerous trademarks with the United States Patent and Trademark Office, including, but not limited to: STANDARD PROCESS® (U.S. Trademark Registration No. 2,329,616), SP® (U.S. Trademark Registration Nos. 2,469,448, 2,888,707, and 3,618,534), SP STANDARD PROCESS® (U.S. Trademark Registration No. 3,726,215), CATALYN® (U.S. Trademark

3

Registration No. 1,476,530), ZYPAN® (U.S. Trademark Registration No. 1,982,691), LIGAPLEX® (U.S. Trademark Registration No. 1,984,258), CATAPLEX® (U.S. Trademark Registration No. 1,984,251), CONGAPLEX® (U.S. Trademark Registration No. 1,995,346), MULTIZYME® (U.S. Trademark Registration No. 2,548,738), ALLERPLEX® (U.S. Trademark Registration No. 2,321,705), GASTREX® (U.S. Trademark Registration No. 2,332,945), SP CLEANSE® (U.S. Trademark Registration No. 2,622,227), GASTRO-FIBER® (U.S. Trademark Registration No. 2,730,337), and SP GREEN FOOD® (U.S. Trademark Registration No. 3,665,686) (collectively, the "Standard Process Trademarks").

10.     The registration for each of the Standard Process Trademarks is valid, subsisting and in full force and effect.  Further, pursuant to 15 U.S.C. § 1065, the Standard Process Trademarks serve as conclusive evidence of Standard Process's ownership of the marks and its exclusive right to use and direct the use of the marks in commerce and in connection with the sale and distribution of the Standard Process Products identified in the registrations, as provided by 15 U.S.C. § 1115(b).

11.     Standard Process actively uses and markets the Standard Process Trademarks in commerce.

12.     Due to the superior quality and exclusive distribution of Standard Process Products, and because Standard Process is uniquely recognized as the source of these high quality products, the Standard Process Trademarks have substantial value.

13.     Authorized Resellers are not allowed to use the Standard Process Trademarks for purposes of marketing and selling without Standard Process's prior written approval.

**Standard Process Has Implemented Strict Quality Control Procedures**

14.     Standard Process exercises strict quality controls over the production and distribution of Standard Process Products.  Standard Process's ability to implement these quality

controls is essential to the integrity and quality of Standard Process Products, as well as the value of the Standard Process Trademarks and other intellectual property.

15.     Standard Process maintains the quality controls over Standard Process Products by selling them exclusively through Authorized Resellers.

16.     Authorized Resellers are required to sell products only in certain channels, and to abide by Standard Process's resale policy and other policies and procedures (collectively, the "Standard Process Policies").  The Standard Process Policies impose numerous quality control requirements and restrict the manner in which Standard Process products may be marketed and sold to consumers.

17.     To ensure that customers receive the genuine and high-quality products they expect from Standard Process, the Standard Process Policies require Authorized Resellers to inspect Standard Process Products pursuant to specific terms.  Upon receiving products and during storage, Authorized Resellers are required to inspect the products for damage, defects, broken seals, evidence of tampering, or other non-conformance and to remove any such products from inventory.  To prevent the sale of expired products, Authorized Resellers are also required to inspect inventory regularly for expired or soon-to-be expired products and remove those products from inventory.

18.     Authorized Resellers must also store the products in accordance with the guidelines specified by Standard Process.  Authorized Resellers must store Standard Process Products in accordance with any directions on product labels or other storage guidelines and as otherwise specified by Standard Process.

19.     Authorized Resellers must sell Standard Process Products in their original packaging and refrain from altering any product or removing or altering any label or literature on

or accompanying the product.  Authorized Resellers are prohibited from altering, defacing, or removing any serial number, UPC code, batch or lot code, or other identifying information on any product or product packaging.  These requirements make certain that consumers receive genuine Standard Process Products.

20.   Standard Process also ensures that consumers receive quality and safe products by requiring its Authorized Resellers to communicate all safety information to end-user customers and to cooperate with Standard Process with respect to any product recall.

21.   The Standard Process Policies also require Authorized Resellers to provide certain services to their customers.  Authorized Resellers must obtain sufficient product knowledge to advise customers on the selection and safe use of the Standard Process Products in their inventory.  Authorized Resellers must also make themselves available to respond to customer questions and concerns both before and after sale of Standard Process Products.

22.   Standard Process also takes steps to prohibit the resale of Standard Process Products by unauthorized resellers on the Internet to avoid the potential health and safety risks and damage to the Standard Process brand that could arise if the products are not sold through the proper channels.

23.   Authorized Resellers are permitted to sell Standard Process Products only to end-users.  The Standard Process Policies prohibit Authorized Resellers from selling Standard Process Products to any person or entity that they know or have reason to believe intends to resell the products.

24.   In addition, Authorized Resellers are prohibited from selling Standard Process Products on any website, including third-party marketplaces such as Amazon, eBay, Walmart

Marketplace, or Craigslist, without prior written consent of Standard Process or through Patient Direct by Standard Process.

### Standard Process Discovered Defendants' Unauthorized Sale Of Standard Process Products On The Internet

25.     Due to the health and safety risks, as well as customer and reputational concerns, associated with the illegal sale of Standard Process Products by unauthorized Internet sellers, Standard Process polices the sale of Standard Process Products online.

26.     Through these efforts, Standard Process discovered Standard Process Products being illegally sold by Defendants on Amazon under the storefront name "Organic Melodies."

27.     Upon information and belief, Defendants, through this website, accept and fulfill orders from Wisconsin residents for Standard Process Products and ship Standard Process Products to persons located in Wisconsin.

28.     Defendants are not Authorized Resellers of Standard Process Products and Defendants' offering of Standard Process Products on this website is in violation of the Standard Process Trademarks and the agreements between Standard Process and its Authorized Resellers.

### Defendants Are Willfully Infringing On The Standard Process Trademarks

29.     Defendants, without Standard Process's authorization, have sold, and continue to sell, products bearing the Standard Process Trademarks on Amazon.

30.     Standard Process sent Defendants cease and desist letters on about October 9, 2017 and November 16, 2017, demanding that that they stop selling Standard Process Products and remove all Standard Process Products from their Amazon storefront and other unauthorized websites.  Defendants, however, continue to sell Standard Process Products.

7

31.     The unauthorized products Defendants sell are materially different than genuine Standard Process Products, as they are sold without Standard Process's quality controls and customer service benefits, which are essential elements of Standard Process Products.

32.     As a result, Defendants have misled, and continue to mislead, consumers into believing they are purchasing genuine Standard Process Products when, in fact, they are not.

33.     Consumers who purchase Standard Process Products from Defendants are misled, confused, and deceived into believing they are buying genuine Standard Process Products, but they are not receiving the benefit of Standard Process's established quality controls or customer service that accompany genuine Standard Process Products.

### Defendants Are Tortiously Interfering With Standard Process's Agreements With Its Authorized Resellers

34.     Upon information and belief, Defendants have purchased Standard Process Products from Standard Process Authorized Resellers for purposes of reselling them on the Internet.

35.     Upon information and belief, Defendants knew that Standard Process's agreements with its Authorized Resellers prohibit the sale of Standard Process Products to third parties for purposes of resale.

36.     Upon information and belief, Defendants willfully and knowingly induced unknown Authorized Resellers to breach their agreements with Standard Process so that they could acquire Standard Process Products and resell them.

### Standard Process Has Suffered Significant Harm As A Result Of Defendants' Conduct

37.     Standard Process has suffered, and will continue to suffer, significant monetary harm as a result of Defendants' actions including, but not limited to, loss of sales, damage to its intellectual property, and damage to its existing and potential business relations.

38.     Standard Process has suffered, and will continue to suffer, irreparable harm as a result of Defendants' actions, including, but not limited to, irreparable harm to its reputation, goodwill, business and customer relationships, intellectual property rights and brand integrity.

39.     Standard Process is entitled to injunctive relief because, unless enjoined by this Court, Defendants will continue to unlawfully sell Standard Process Products, causing continued irreparable harm to Standard Process's reputation, goodwill, relationships, intellectual property and brand integrity.

40.     Defendants' conduct was and is knowing, reckless, intentional, willful, malicious, wanton and contrary to law.

41.     Defendants' willful violations of the Standard Process Trademarks and continued pattern of misconduct demonstrate intent to harm Standard Process.

**FIRST CAUSE OF ACTION**
**Trademark Infringement**
**U.S.C. §§ 1114 and 1125(a)(1)(a)**

42.     Standard Process hereby incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

43.     Standard Process is the owner of the Standard Process Trademarks.

44.     Standard Process has registered the Standard Process Trademarks with the United States Patent and Trademark Office.

45.     The Standard Process Trademarks are valid and subsisting trademarks in full force and effect.

46.     Defendants willfully and knowingly used, and continue to use, the Standard Process Trademarks in commerce for purposes of selling Standard Process Products on the Internet without Standard Process's consent.

47.    Defendants' use of the Standard Process Trademarks in connection with the unauthorized sale of Standard Process Products is likely to cause confusion, cause mistake, or deceive because it suggests that the products Defendants offer for sale are the same as products legitimately bearing the Standard Process Trademarks, and that the products originate from, or are sponsored, authorized, or otherwise connected with, Standard Process.

48.    Defendants' use of the Standard Process Trademarks in connection with the sale of Standard Process Products is likely to cause confusion, cause mistake, or deceive because it suggests that the products Defendants offer for sale are genuine and authentic Standard Process Products.

49.    The products sold by Defendants are not, in fact, genuine and authentic Standard Process Products.  The products sold by Defendants are materially different because, among other reasons, they are not subject to the same quality control standards as genuine Standard Process Products and do not come with Standard Process's customer service.

50.    Defendants' unauthorized use of the Standard Process Trademarks has materially damaged the value of the Standard Process Trademarks, caused significant damage to Standard Process's business relations, and infringed on the Standard Process Trademarks.

51.    As a result, Standard Process has suffered damages, including to its business, goodwill, reputation, and profits in an amount to be proven at trial.

52.    Pursuant to 15 U.S.C. § 1116, Standard Process is entitled to injunctive relief enjoining Defendants' infringing conduct.

53.    Pursuant to 15 U.S.C. § 1117(a), Standard Process is entitled to an award of attorneys' fees.

## SECOND CAUSE OF ACTION
### False Advertising
### 15 U.S.C. § 1125(a)(1)(b)

54.     Standard Process hereby incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

55.     Standard Process is the owner of the Standard Process Trademarks.

56.     Standard Process has registered the Standard Process Trademarks with the United States Patent and Trademark Office.

57.     The Standard Process Trademarks are valid and subsisting trademarks in full force and effect.

58.     Defendants willfully and knowingly used, and continue to use, the Standard Process Trademarks in interstate commerce for purposes of advertising, promoting, and selling Standard Process Products without Standard Process's consent.

59.     Defendants' advertisements and promotions of their products unlawfully using the Standard Process Trademarks have been disseminated to the relevant purchasing public.

60.     Defendants' use of the Standard Process Trademarks in connection with the unauthorized advertising, promotion, and sale of Defendants' products misrepresents the nature, characteristics, qualities, and origin of Defendants' products.

61.     Defendants' use of the Standard Process Trademarks in connection with the unauthorized advertising, promotion, and sale of Defendants' products is likely to cause confusion, cause mistake, or deceive because it suggests that the products Defendants offer for sale are genuine and authentic Standard Process Products, and originate from, or are sponsored, authorized, or otherwise connected with Standard Process.

62.     Defendants' unauthorized use of the Standard Process Trademarks in advertising, and otherwise, infringes on the Standard Process Trademarks.

11

63.     As a result, Standard Process has suffered damages, including to its business, goodwill, reputation, and profits in an amount to be proven at trial.

64.     Pursuant to 15 U.S.C. § 1116, Standard Process is entitled to injunctive relief enjoining Defendants' conduct.

65.     Pursuant to 15 U.S.C. § 1117(a), Standard Process is entitled to an award of attorneys' fees.

### THIRD CAUSE OF ACTION
**Unfair Competition**
**15 U.S.C. § 1125(a)**

66.     Standard Process hereby incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

67.     Standard Process is the owner of the Standard Process Trademarks.

68.     Standard Process has registered the Standard Process Trademarks with the United States Patent and Trademark Office.

69.     The Standard Process Trademarks are valid and subsisting trademarks in full force and effect.

70.     Defendants have willfully and knowingly used, and continue to use, the Standard Process Trademarks in interstate commerce for purposes of selling Standard Process Products without Standard Process's consent.

71.     Defendants' use of the Standard Process Trademarks in connection with the unauthorized sale and advertising of products is likely to cause confusion, cause mistake, or deceive an appreciable number of ordinarily prudent purchasers as to the affiliation, connection, association, sponsorship or approval of Standard Process Products because it suggests that the products Defendants offer for sale originate from, or are sponsored, authorized, or otherwise connected with Standard Process.

72. Defendants' unauthorized sale of products bearing the Standard Process Trademarks, and unauthorized use of the Standard Process Trademarks in advertising materially damages the value of the Standard Process Trademarks and causes significant damage to Standard Process's business relations.

73. Defendants' unauthorized sale of products bearing the Standard Process Trademarks and unauthorized use of the Standard Process Trademarks in advertising infringes on the Standard Process Trademarks.

74. As a result, Standard Process has suffered damages, including to its business, goodwill, reputation, and profits in an amount to be proven at trial.

75. Pursuant to 15 U.S.C. § 1116, Standard Process is entitled to injunctive relief enjoining Defendants' conduct.

76. Pursuant to 15 U.S.C. § 1117(a), Standard Process is entitled to an award of attorneys' fees.

## FOURTH CAUSE OF ACTION
### Trademark Dilution
### 15 U.S.C. § 1125(c)

77. Standard Process hereby incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

78. Standard Process is the owner of the Standard Process Trademarks.

79. Standard Process has registered the Standard Process Trademarks with the United States Patent and Trademark Office.

80. The Standard Process Trademarks are valid and subsisting trademarks in full force and effect.

81. The Standard Process Trademarks are famous, distinctive, and widely recognized marks by the consuming public.

82. Standard Process is widely recognized as the designated source of goods bearing the Standard Process Trademarks.

83. Defendants willfully and knowingly used, and continue to use, the Standard Process Trademarks in commerce for purposes of selling Standard Process Products on the Internet without Standard Process's consent.

84. Defendants' willful use of the Standard Process Trademarks in connection with the unauthorized and illegal sale of its products dilutes the Standard Process Trademarks because the products Defendants sell are not, in fact, genuine and authentic Standard Process Products and are not sponsored, authorized, or connected with Standard Process.

85. Defendants' use of the Standard Process Trademarks in connection with the unauthorized sale of Standard Process Products is likely to cause confusion, cause mistake, or deceive because it suggests that the products Defendants offer for sale are the same as products legitimately bearing the Standard Process Trademarks, and that the products originate from, or are sponsored, authorized, or otherwise connected with, Standard Process.

86. As a result of Defendants' unlawful actions, the reputation of the Standard Process Trademarks has been and continues to be harmed, and Standard Process has suffered, and continues to suffer, immediate and irreparable injury.

87. Further, Standard Process has suffered damages, including to its business, goodwill, reputation, and profits in an amount to be proven at trial.

88. Pursuant to 15 U.S.C. § 1116, Standard Process is entitled to injunctive relief enjoining Defendants' misconduct.

89. Pursuant to 15 U.S.C. § 1117(a), Standard Process is entitled to an award of attorneys' fees.

## FIFTH CAUSE OF ACTION
### Common Law Trademark Infringement

90.     Standard Process hereby incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

91.     Standard Process is the owner of the Standard Process Trademarks.

92.     Standard Process has registered the Standard Process Trademarks with the United States Patent and Trademark Office.

93.     The Standard Process Trademarks are valid and subsisting trademarks in full force and effect.

94.     The Standard Process Trademarks are distinctive and widely recognized by the consuming public.  Standard Process Products are sold and purchased through its Authorized Resellers throughout the United States, including Wisconsin.

95.     Standard Process is widely recognized as the designated source of goods bearing the Standard Process Trademarks.

96.     Defendants willfully and knowingly used, and continue to use, the Standard Process Trademarks in interstate commerce for purposes of selling Standard Process Products on the Internet without Standard Process's consent.

97.     Defendants' knowing and willful use of the Standard Process Trademarks without Standard Process's consent in connection with the unauthorized and illegal sale of their products infringes on the Standard Process Trademarks and is contrary to honest practice in industrial or commercial matters.

98.     Defendants' knowing and willful use of the Standard Process Trademarks in connection with the unauthorized and illegal sale of their products without Standard Process's consent is likely to cause confusion, mistake, or deceive because it suggests that the products

15

Defendants offer for sale are the same as the products legitimately bearing the Standard Process Trademarks, and that the products originate from, or are sponsored, authorized, approved or otherwise connected with Standard Process.

99.     Defendants use of the Standard Process Trademarks in connection with the sale of their products is likely to cause confusion, mistake or deceive because it suggests that the products Defendants offer for sale are genuine and authentic Standard Process Products when, in fact, they are not.

100.    Defendants' unlawful actions and unauthorized use of the Standard Process Trademarks has materially damaged the value of the Standard Process Trademarks, caused significant damage to Standard Process's business relations, and infringed on Standard Process's trademarks.

101.    As a result, Standard Process has suffered, and continues to suffer, immediate and irreparable harm.  Standard Process has also suffered, and continues to suffer, damages, including, but not limited to, loss of business, goodwill, reputation, and profits in an amount to be proven at trial.

102.    Standard Process is also entitled to punitive damages because Defendants acted maliciously toward Standard Process or in an intentional disregard of the rights of Standard Process.

## SIXTH CAUSE OF ACTION
### Common Law Unfair Competition

103.    Standard Process hereby incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

104.    Standard Process is the owner of the Standard Process Trademarks.

105.    Standard Process has registered the Standard Process Trademarks with the United States Patent and Trademark Office.

106.    The Standard Process Trademarks are valid and subsisting trademarks in full force and effect.

107.    The Standard Process Trademarks are distinctive and widely recognized marks by the consuming public.

108.    Standard Process is widely recognized as the designated source of goods bearing the Standard Process Trademarks.

109.    Defendants willfully and knowingly used, and continue to use, the Standard Process Trademarks in commerce for purposes of selling Standard Process Products on the Internet without Standard Process's consent.

110.    Defendants' knowing and willful use of the Standard Process Trademarks in connection with the unauthorized and illegal sale of products bearing the Standard Process Trademarks without Standard Process's consent infringes on the Standard Process Trademarks and is contrary to honest practice in industrial or commercial matters.

111.    Defendants' knowing and willful use of the Standard Process Trademarks in connection with the unauthorized and illegal sale of their products without Standard Process's consent is likely to cause confusion, mistake, or deception as to the source of the origin of such Standard Process Products among consumers, who believe that Defendants' products are identical to and endorsed by Standard 7Process when, in fact, they are not.

112.    Defendants' unlawful actions constitute active misrepresentation as to the source of the products they sell.  These false representations tend to confuse customers and induce

customers to believe that Defendants' products are genuine and authentic Standard Process Products when, in fact, they are not.

113.    As a result, Standard Process has suffered, and continues to suffer, immediate and irreparable harm.   Standard Process has also suffered, and continues to suffer, damages, including, but not limited to, loss of business, goodwill, reputation, and profits in an amount to be proven at trial.

114.    Standard Process is also entitled to punitive damages because Defendants acted maliciously toward Standard Process or in an intentional disregard of the rights of Standard Process.

**SEVENTH CAUSE OF ACTION**
**Deceptive Trade Practices**
**Wis. Stat. § 100.18**

115.    Standard Process hereby incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

116.    Standard Process is the owner of the Standard Process Trademarks.

117.    Standard Process has registered the Standard Process Trademarks with the United States Patent and Trademark Office.

118.    The Standard Process Trademarks are valid and subsisting trademarks in full force and effect.

119.    Defendants willfully and knowingly used, and continue to use, the Standard Process Trademarks in commerce for purposes of advertising, promoting, and selling Standard Process Products on the Internet without Standard Process's consent.

120.    Defendants' use of the Standard Process Trademarks in connection with the unauthorized advertising, promotion, and sale of Defendant's products misrepresents, deceives, and misleads consumers regarding the nature, characteristics, qualities, and origin of Defendants'

products because it suggests that the products have certain characteristics and qualities that they do not.

121.   Defendants' use of the Standard Process Trademarks in connection with the unauthorized advertising, promotion, and sale of Standard Process Products misrepresents, deceives, and misleads consumers because it suggests that the products Defendants offer for sale are the same as products legitimately bearing the Standard Process Trademarks, and that the products originate from, or are sponsored, authorized, or otherwise connected with, Standard Process.

122.   Defendants' use of the Standard Process Trademarks in connection with the unauthorized advertising, promotion, and sale of Standard Process Products misrepresents, deceives, and misleads consumers because it suggests that the products Defendants offer for sale are genuine and authentic Standard Process Products when, in fact, they are not.  The products sold by Defendants are materially different because, among other reasons, they are not subject to the same quality control standards as genuine Standard Process Products and do not come with Standard Process's customer service.

123.   Defendants' use of the Standard Process Trademarks in connection with the unauthorized advertising, promotion, and sale of Standard Process Products is a deceptive trade practice under Wis. Stat. § 100.18.

124.   Pursuant to Wis. Stat. § 100.18(11)(a), Standard Process is entitled to injunctive relief enjoining Defendants' conduct.

125.   Pursuant to Wis. Stat. § 100.18(11)(b), Standard Process is entitled to an award of costs and attorneys' fees.

126.   Standard Process is also entitled to punitive damages because Defendants acted maliciously toward Standard Process or in an intentional disregard of the rights of Standard Process.

## EIGHTH CAUSE OF ACTION
### Tortious Interference with Contract and Business Relations

127.   Standard Process hereby incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

128.   Standard Process has entered into business relations and agreements with its Authorized Resellers to sell Standard Process Products.  These agreements and the Standard Process Policies specifically prohibit Standard Process's Authorized Resellers from selling Standard Process Products to third parties, such as Defendants, for purposes of resale.

129.   Defendants knew that the Standard Process Policies and Standard Process's agreements with its Authorized Resellers prohibit Standard Process's Authorized Resellers from selling Standard Process Products to third parties, such as Defendants, for purposes of resale.

130.   Defendants willfully and knowingly interfered with the Standard Process Policies and the agreements between Standard Process and its Authorized Resellers by acquiring Standard Process Products and reselling them on the Internet in violation of the Standard Process Policies and those agreements.

131.   Defendants acted with a wrongful purpose by acquiring Standard Process Products for the purpose of reselling those products on the Internet in violation of the Standard Process Policies and Standard Process's agreements with its Authorized Resellers.

132.   Defendants' actions have caused injury to Standard Process for which Standard Process is entitled to compensatory damages in an amount to be proven at trial.

133.    Standard Process is also entitled to punitive damages because Defendants acted maliciously toward Standard Process or in an intentional disregard of the rights of Standard Process.

**PRAYER FOR RELIEF**

WHEREFORE, Standard Process prays for relief and judgment as follows:

A.    Judgment in favor of Standard Process and against Defendants in an amount to be determined at trial including, but not limited to, compensatory damages, statutory damages, treble damages, restitution, including disgorgement of profits, punitive damages, and pre-judgment and post-judgment interest, as permitted by law;

B.    That a permanent injunction be issued enjoining Defendants and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns, any and all other entities owned or controlled by Defendants, and all of those in active concert and participation with Defendants (the "Enjoined Parties") as follows:

      i)    Prohibiting the Enjoined Parties from advertising or selling, via the Internet or otherwise, all Standard Process Products;

      ii)    Prohibiting the Enjoined Parties from using any of the Standard Process Trademarks in any manner, including advertising on the Internet;

      iii)    Prohibiting the Enjoined Parties from importing, exporting, manufacturing, producing, distributing, circulating, selling, offering to sell, advertising, promoting, or displaying any and all Standard Process Products as well as any products bearing any of the Standard Process Trademarks;

      iv)    Prohibiting the Enjoined Parties from disposing of, destroying, altering, moving, removing, concealing, or tampering with any records related to

21

any products sold by them which contain the Standard Process Trademarks, including: invoices, correspondence with vendors and distributors, bank records, account books, financial statements, purchase contracts, sales receipts, and any other records that would reflect the source of the products that Defendants have sold bearing these trademarks;

v)      Requiring the Enjoined Parties to take all action to remove from the Enjoined Parties' websites any reference to any of Standard Process's products, or any of the Standard Process Trademarks;

vi)     Requiring the Enjoined Parties to take all action, including but not limited to, requesting removal from the Internet search engines (such as Google, Yahoo!, and Bing), to remove from the Internet any of the Standard Process Trademarks which associate Standard Process's products or the Standard Process Trademarks with the Enjoined Parties or the Enjoined Parties' website;

vii)    Requiring the Enjoined Parties to take all action to remove unauthorized Standard Process Trademarks from the Internet, including from www.amazon.com;

C.      An award of attorneys' fees, costs, and expenses; and

D.      Such other and further relief as the Court deems just, equitable and proper.

Respectfully submitted,

*/s/ Ann M. Maher*

Ann M. Maher
Husch Blackwell LLP
555 East Wells Street
Suite 1900
Milwaukee, WI 53202-3819
Telephone: 414-978-5410
Facsimile: 414-223-5000
Email: ann.maher@huschblackwell.com

## **JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Standard Process demands a

trial by jury on all issues so triable.

*/s/ Ann M. Maher*

Ann M. Maher

11/16/2017 28709573